**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| EVGENY OYSTACHER, | |
| Plaintiff, | Civil Action No. 25-3276 (BAH) |
| v. | Judge Beryl A. Howell |
| MARCO RUBIO, *et al.*, | |
| Defendants. | |

**<u>MEMORANDUM OPINION</u>**

Plaintiff Evgeny Oystacher, a citizen of Russia and Israel, seeks to compel the government defendants to adjudicate his nonimmigrant visa application, which had been in administrative proceedings for eight months at the time the complaint was filed. *See* Pet. for Writ of Mandamus and Compl. for Declaratory & Injunctive Relief ("Compl.") ¶¶ 6, 32, 53, 62, ECF No. 1. Asserting claims that defendants—Secretary of State Marco Rubio, Brian Heath, the Consul General at the U.S. Consulate in Frankfurt, and John Does #1-#10, who are Consular Officers responsible for issuing visas at the U.S. Consulate in Frankfurt—have unreasonably delayed adjudication of his visa application, in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1), the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, the INA's implementing regulations, and agency policy, Compl. ¶ 62, plaintiff seeks an order or writ of mandamus directing adjudication, *id.* at 15 (Prayer for Relief). Defendants now move to dismiss for lack of jurisdiction, under Federal Rule of Civil Procedure 12(b)(1), or, in the alternative, for failure to state a claim under Rule 12(b)(6). *See* Defs.' Mot. to Dismiss and Mem. in Support ("Defs.' Mem.") at 1, ECF No. 5. For the reasons explained below, defendants' motion to dismiss is granted pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim of unreasonable delay under *Telecommunications Research & Action Center v. FCC* ("*TRAC*"), 750 F.2d 70 (D.C. Cir. 1994).

1

## I.    BACKGROUND

The statutory and regulatory background underlying the claims is set out below, followed by a summary of the factual and procedural history of this case.

### A.    Statutory and Regulatory Background

The INA allows for issuance of nonimmigrant worker visas.  8 U.S.C. § 1202(c).  First, employers may file an I-129 petition for an O-1 visa, reserved for aliens of extraordinary ability or achievement.  8 C.F.R. § 214.2(o)(2).  The applicant for such visa must then file an application on either a Form DS-180 or, at the direction of a consular officer, Form DS-156, with the United States Customs and Immigration Services ("USCIS").  22 C.F.R. § 41.103(a)(1).  After the applicant appears for an in-person interview before a consular officer, *id.* § 41.102(a), and properly completes and executes the visa application, the consular officer may then choose to issue, refuse, or discontinue granting the visa, *id.* § 41.121(a).

An "applicant [can] overcome a refusal . . . in two instances: when additional evidence is presented, or administrative processing is completed."  9 FAM § 306.2-2(A)(a).  With respect to the former, "[w]hen the applicant has presented additional evidence to attempt to overcome a prior refusal," the consular office "re-open[s] and re-adjudicate[s] the case by overcoming the prior INA 221(g) refusal and determining whether the applicant is eligible for a visa."  *Id.* § 306.2-2(A)(a)(1).  In the latter circumstance, "[a] prior INA 221(g) refusal entered for administrative processing may be overcome" if the consular officer "determine[s] administrative processing is completed" and receives any additional "needed information."  *Id.* § 306.2-2(A)(a)(2)(a).

### B.      Factual Background

Plaintiff, a citizen of Russia and Israel, serves as the Chief Executive Officer ("CEO") of Industriax, a "U.S.-based" company.  Compl. ¶¶ 6, 26, 35.[1]  On an unspecified date, Industriax LLC filed an O-1A petition for plaintiff "based on his extraordinary ability in business and technology leadership," which USCIS approved through December 13, 2027.  *Id.* ¶¶ 1, 26.[2]  On January 10, 2025, plaintiff submitted a DS-160 application for an O-1 visa, and the following week, attended his visa interview at the U.S. consulate in Frankfurt.  *Id.* ¶¶ 27-28.  During the interview, the consular officer "told him that his visa application would require administrative processing."  *Id.* ¶ 29.  Plaintiff received a 221(g) refusal, which noted that the Consulate was "unable to conclude processing of [his] non-immigrant visa application" and that "certain administrative documents were needed to complete processing the application."  *Id.* ¶ 29; *id.*, Ex. A, Notice of Refusal, ECF No. 1-1.  On January 17, 2025, the day after his interview, plaintiff "fully responded to the consulate's notice and provided all requested documents."  Compl. ¶ 30. On January 31, 2025, the Consulate "issued an additional request for information, to which Plaintiff responded the same day."  *Id.* ¶ 31.  The Consular Electronic Application Center ("CEAC") case status for plaintiff indicates the application was last updated on January 31, 2025. *Id.*; *id.*, Ex. C, Refusal of Nonimmigrant Visa Application ("CEAC Status"), ECF No. 1-3.

Despite inquiring "multiple times with the embassy about the status of his visa application," plaintiff received "boilerplate responses informing him that his application is still undergoing administrative processing that is a 'normal part of the visa application process' and that the embassy 'will see that the application is adjudicated as soon as the administrative

---

[1]      The complaint states that plaintiff applied for and interviewed at the U.S. consulate in Frankfurt, Compl. ¶ 28, but his country of residence is unclear on the record before the Court, *see generally id.*

[2]      The complaint does not specify when the O-1A petition was filed for plaintiff.  *See generally* Compl.

processing is completed.'"  Compl. ¶ 33; *id.*, Ex. B, Email from U.S. Consulate in Frankfurt to Pl. (Mar. 25, 2025), ECF No. 1-2.  As of September 19, 2025, the CEAC case status for plaintiff continued to show that his case was "refused for administrative processing," "will remain refused while undergoing such processing," and that he "will receive another adjudication once such processing is complete."  Compl. ¶ 38; CEAC Status.

Plaintiff alleges that the delay in receiving a final decision on his nonimmigrant visa application has caused "frustration and disappointment for the entire family, particularly after [plaintiff, his wife, and children, including plaintiff's nine-year-old U.S. citizen son,] had already made logistical and emotional preparations for a U.S. move."  Compl. ¶ 36.  Additionally, plaintiff's "inability to establish a physical presence in the United States undercuts his credibility with investors, suppliers, and clients."  *Id.* ¶ 35.  Awaiting resolution, the family "has also borne the costs of maintaining dual residences," and the older children are "unable to plan their studies and futures with clarity" and therefore "remain in limbo."  *Id.* ¶ 36.

### C.    Procedural History

On September 19, 2025, just over eight months after plaintiff's visa application was placed in "administrative processing," plaintiff filed a two-count complaint, seeking to compel defendants to adjudicate his visa application.  *Id.* ¶ 28.  In Count I, plaintiff petitions for mandamus, *id.* ¶¶ 44-53, and in Count II, plaintiff brings a claim under § 706(1) of the APA, alleging that his visa application has been unreasonably delayed, *id.* ¶¶ 54-62.  Plaintiff asserts that defendants have a "nondiscretionary duty to Plaintiff, which requires that 'all nonimmigrant visa applications shall be reviewed and adjudicated by a consular officer,'" *id.* ¶¶ 46, 51, 55 (emphasis omitted).  Accordingly, he seeks a writ of mandamus directing adjudication of his application, or an order pursuant to the APA's § 706(1) directing the same.

On December 5, 2025, defendants moved to dismiss plaintiff's complaint, under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defs.' Mem. at 1, which motion is now ripe for resolution, *see* Pl.'s Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n"), ECF No. 7; Defs.' Reply in. Support of Mot. to Dismiss ("Defs.' Reply"), ECF No. 9.

## II.    LEGAL STANDARD

### A.    Motion to Dismiss for Lack of Subject-Matter Jurisdiction

"Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). "[F]orbidden . . . from acting beyond [their] authority," *NetworkIP, LLC v. FCC*, 548 F.3d 116, 120 (D.C. Cir. 2008), federal courts thus "have an affirmative obligation 'to consider whether the constitutional and statutory authority exist for us to hear each dispute,'" *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir. 1996) (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 196 (D.C. Cir. 1992)). Absent subject-matter jurisdiction, a case must be dismissed. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506-07 (2006); FED R. CIV. P. 12(b)(1), 12(h)(3).

When reviewing a motion to dismiss under Rule 12(b)(1), the court must "assume that the complaint states a valid legal claim," *Huron v. Cobert*, 809 F.3d 1274, 1278 (D.C. Cir. 2016), and "accept the well-pleaded factual allegations as true and draw all reasonable inferences from those allegations in the plaintiff's favor," *Kareem v. Haspel*, 986 F.3d 859, 865 (D.C. Cir. 2021) (quoting *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015)). Furthermore, "[a court] may consider materials outside the pleadings to determine [its] jurisdiction." *Id.* at 866 n.7.

**B.    Motion to Dismiss for Failure to State a Claim**

To survive a Rule 12(b)(6) motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A facially plausible claim pleads facts that are not "'merely consistent with' a defendant's liability" but "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556-57). In deciding a motion under Rule 12(b)(6), a court must accept all factual allegations as true, "even if doubtful in fact," *Twombly*, 550 U.S. at 555, and "construe the complaint 'in favor of the plaintiff,'" *Langeman v. Garland*, 88 F.4th 289, 294 (D.C. Cir. 2023) (quoting *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012)). Courts, however "need not accept inferences . . . not supported by the facts set out in the complaint, nor must the court accept legal conclusions." *Id.* (quoting *Hettinga*, 677 F.3d at 476). In determining whether a complaint fails to state a claim, although a court must review the whole complaint, *Twombly*, 550 U.S. at 555, courts are limited to "consider[ing] only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice," *Marshall's Locksmith Serv. Inc. v. Google, LLC*, 925 F.3d 1263, 1271-72 (D.C. Cir. 2019) (second alteration in original) (quoting *Hurd v. Dist. of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017)).

**III.    DISCUSSION**

Defendants advance three arguments in support of dismissal: (1) that plaintiff fails to identify a discrete, non-discretionary duty to adjudicate his visa application; (2) that the consular non-reviewability doctrine bars judicial review; and (3) that even if the court assesses the merits, plaintiff fails to state a claim. Defs.' Mem. at 4-19. Each is discussed in turn, and plaintiff's

failure on the merits adequately to allege an unreasonable delay, provides the ground to resolve this motion.

### A.       Non-Discretionary Duty

"[T]o proceed under either the APA or the Mandamus Act based on a claim of 'an agency's unreasonable delay,'" *Asadi v. Dep't of State*, No. 23-cv-1953 (RC), 2024 WL 3835409, at \*5 (D.D.C. Aug. 15, 2024) (quoting *Arabzada v. Donis*, 725 F. Supp. 3d 1, 11 (D.D.C. 2024)), a plaintiff "must first allege that the agency 'failed to take a discrete agency action that it is required to take,'" *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023) (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004)); *see also Viet. Veterans of Am. v. Shinseki*, 599 F.3d 654, 659 n.6 (D.C. Cir. 2010) (stating that "standards for obtaining relief" under the Mandamus Act and the APA "are essentially the same"); *Babamuradova v. Blinken*, 633 F. Supp. 3d 1, 19 (D.D.C. 2022) ("What plaintiffs must show to establish a mandamus claim is similar to what they must show . . . under the APA, as in both instances plaintiffs must establish that the government has a clear, nondiscretionary duty."); *Hojjatoleslami v. Rubio*, No. 24-cv-2871 (JDB), 2025 WL 2159196, at \*4 (D.D.C. July 30, 2025) ("[T]he Court can compel the defendants to take further action on Hojjatoleslami's application only if (i) the defendants are under a clear, nondiscretionary duty to do so and (ii) they have unreasonably delayed discharging that duty."). Defendants argue that plaintiff's claims are not reviewable here because "[p]laintiff cannot identify a clear, non-discretionary duty requiring a consular office to take any action on the Visa Application now that it has been refused under INA Section 221(g)." Defs.' Mem. at 4.  To bolster their argument, defendants further assert that the unpublished D.C. Circuit decision in *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024), is "dispositive of this case." Defs.' Mem. at 5 & n.1.

In *Karimova*, the D.C. Circuit held that the plaintiff had failed "adequately [to] allege[] that the consular officer has . . . a duty" to adjudicate her visa application conclusively, where plaintiff had "relie[d] on Section 555(b) of the APA"—"and *only* Section 555(b)"—"as the source of the consular officer's alleged duty," because "Section 555(b) does no such thing." *Karimova*, 2024 WL 3517852, at *1, 3 (emphasis in original); *see* 5 U.S.C. § 555(b) (providing that "each agency shall proceed to conclude a matter presented to it" "within a reasonable time"). The Circuit reasoned that Section 555 is not "a specific, unequivocal command to act that would justify mandamus or [APA] Section 706(1) relief every time someone complained of delay," and instead "simply expresses a congressional view that agencies should act within reasonable time frames," "does not in any way dictate how the agency can handle [the plaintiff's] rejected paperwork after a decision has been made," and "*at most* could have entitled her to the official refusal decision she already received." *Id.* at *3-4 (citation and internal quotation mark omitted) (emphasis in original). The Court pointed to three additional considerations that reinforced its conclusion: (1) "consular officers have broad discretion when adjudicating visa applications," *id.* at *4; (2) plaintiff's "'matter' ha[d] already been 'conclude[d],'" *id.* (second alteration in original) (quoting 5 U.S.C. § 555(b)); and (3) plaintiff's claim arose "within a field that is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations and the war power," which "types of claims generally fall outside the Judicial Branch's wheelhouse," *id.* at *5 (cleaned up).

*Karimova* may "cast[] some doubt on whether consular officers are indeed subject to a discrete, mandatory duty to timely complete administrative processing after a visa application has already been 'refused.'" *Baygan v. Blinken*, No. 23-cv-2840 (JDB), 2024 WL 3723714, at *5 n.1 (D.D.C. Aug. 8, 2024); *see also Mahmoodi v. Altman-Winans*, No. 24-cv-2010 (BAH), 2025 WL 763754, at *4 (D.D.C. Mar. 11, 2025). Nonetheless, contrary to defendants' urging to treat

8

*Karimova* as "dispositive of the claims" here, Defs.' Mem. at 5, unlike in *Karimova*, plaintiff relies on 8 U.S.C. § 1202(d) of the INA, in addition to Section 555(b), as the source of defendants' alleged non-discretionary duty, *see* Compl. ¶¶ 55, 57, so *Karimova*'s holding that Section 555(b) does not create a nondiscretionary duty does not necessarily dispose of plaintiff's claims.

In any event, to avoid unnecessarily "enter[ing] into the legal quagmire of differing views on the . . . issue" whether *Karimova* precludes a finding of a mandatory, non-discretionary duty here, *Asim v. Blinken*, No. 24-cv-638 (JEB), 2024 WL 3338778, at *3 (D.D.C. July 8, 2024), "the appropriate action here" is "[a]ssuming, without deciding, that a mandatory non-discretionary agency action applies in the form of the statutory requirement that '[a]ll immigrant visa applications shall be reviewed and adjudicated by a consular officer,'" *Hamdan v. Oudkirk*, No. 24-cv-1001 (BAH), 2024 WL 4553983, at *7 (D.D.C. Oct. 23, 2024) (quoting 8 U.S.C. § 1202(b)); *see also Karimova*, 2024 WL 3517852, at *6 ("locating [USCIS's] 'nondiscretionary duty' to adjudicate visa petitions in a special provision of the immigration code, not Section 555(b)" (quoting *Da Costa*, 80 F.4th at 340)); *Asadi*, 2024 WL 3835409, at *5 ("assum[ing] favorably to Plaintiff that her complaint identifies a clear, non-discretionary duty . . . [even though] Plaintiff largely relies on section 555(b) of the APA as the source of such a duty . . . [since] her claims fail on the merits"); *Giza v. Blinken*, No. 23-cv-1641 (CRC), 2024 WL 3967284, at *4 (D.D.C. Aug. 27, 2024) (holding the same and noting "[t]he Court is mindful of *Karimova* . . . . [H]owever, [plaintiffs] also invoke more specific provisions in the INA—namely, 8 U.S.C. § 1202(b)," an identically worded provision to Section 1202(d)).

Without clear, binding precedent foreclosing plaintiff's position that the INA imposes a non-discretionary duty on the government to adjudicate specific visas, the assumption of reviewability permits consideration of the merits of plaintiff's claims. *See Adan v. Blinken*, No.

24-cv-591 (JDB), 2024 WL 5168521, at *2 n.5 (D.D.C. Dec. 19, 2024) (holding in a similar case that "courts may address the merits of a case when that course of action 'avoid[s] a doubtful issue of statutory jurisdiction'" (quoting *Chalabi v. Hashemite Kingdom of Jordan*, 543 F.3d 725, 728 (D.C. Cir. 2008))); *see, e.g.*, *Niyomwungere v. Blinken*, No. 24-cv-1990 (APM), 2024 WL 5075827, at *3 (D.D.C. Dec. 11, 2024) (post-*Karimova* suit holding that "the court joins other courts in this District that have assumed without deciding that a plaintiff made out a claim of a clear and non-discretionary duty and proceeds to evaluate the delay"); *Giza*, 2024 WL 3967284, at *4 ("The Court need not decide whether the INA or its regulations impose this duty because, either way, the [plaintiffs] have not plausibly alleged that the delay in adjudicating their visa applications is unreasonable."); *Sereshti v. Gaudiosi*, No. 24-cv-1288 (BAH), 2024 WL 4625802, at *6 (D.D.C. Oct. 30, 2024) (same); *Baygan*, 2024 WL 3723714, at *5 (same).[3]

### B.    Consular Nonreviewability

Defendants further assert that plaintiff's suit "runs headfirst into the consular non-reviewability doctrine," Defs.' Mem. at 9, which "shields a consular official's decision to issue or withhold a visa from judicial review," *id.* at 10 (quoting *Colindres v. Dep't of State*, 71 F.4th 1018, 1021 (D.C. Cir. 2023), *cert. denied*, No. 23-348, 2024 WL 3259699 (U.S. July 2, 2024)). "[T]wo narrow exceptions" to the doctrine exist: (1) when the denial of a visa "burdens the citizen's constitutional rights," and (2) "when a statute explicitly authorizes judicial review." *Colindres*, 71 F.4th at 1021 (internal quotation marks omitted) (quoting *Baan Rao Thai Restaurant v. Pompeo*, 985 F.3d 1020, 1024-25 (D.C. Cir. 2021)).

---

[3]    Plaintiff also argues that "[t]o the extent 8 USC § 1202(d) may be ambiguous as to what it means to 'adjudicate' a visa application, the Defendants are not entitled to deference" because of the Supreme Court's decision in *Loper Bright v. Raimondo*, 603 U.S. 369 (2024); Pls.' Opp'n at 3. Defendants do not invoke deference to their interpretation of the word "adjudicate," *see generally* Defs.' Mem.; Defs.' Reply, and for the reasons discussed, defendants are assumed to have the claimed duty to adjudicate plaintiff's visa application, rendering plaintiff's argument irrelevant.

Defendants contend that because "[a] consular officer has decided to withhold issuing a visa," this "ends this matter." Defs.' Mem. at 11. The argument is predicated on the defendants' assumption that the consular officer's "refusal" of the plaintiff's application at the U.S. Consulate General in Frankfurt in January 2025 is "final and conclusive." *Id.* at 9 (quoting *Dep't of State v. Muñoz*, 602 U.S. 899, 908 (2024)). Defendants' arguments are plainly contrary to plaintiff's allegations that the "consular officer did not express any concern with the substance of his petition but told him that his visa would require administrative processing," that the Consulate told him "certain administrative documents were needed to *complete* processing," and that the Consulate told him that the delay is a "'normal part of the visa application process' and that the embassy 'will see that the application is adjudicated as soon as the administrative processing is completed,'" Compl. ¶¶ 28-29, 33 (emphasis added), all of which indicate an ongoing review.

Defendants only passingly acknowledge the near-universal consensus of Judges on this Court, including the undersigned, holding the doctrine does not apply when a consular officer has refused a visa application under 8 U.S.C. § 1201(g), but the application remains in a state of administrative processing. Defs.' Mem. at 10-11 (citing *Janay v. Blinken*, 743 F. Supp. 3d 96, 111 (D.D.C. 2024)); *see, e.g.*, *Sereshti*, 2024 WL 4625802, at *4 ("[T]he consular officer's 'refusal' of plaintiff's visa application subject to further 'administrative processing' may not have been a final decision on his application, but rather a 'temporary measure, signaling that processing [was] ongoing.'" (second alteration in original)); *Baygan*, 2024 WL 3723714, at *4 (post-*Karimova* suit concluding "that refusal of an application for administrative processing is a temporary, interim status and that the consular nonreviewability doctrine does not apply under the final-decision grounds raised by the State Department"); *Al-Gharawy v. Dep't of Homeland Sec.*, 617 F. Supp. 3d. 1, 16 (D.D.C. 2022) (finding that the consular nonreviewability doctrine did not apply because

11

"the factual allegations in the complaint, taken as true at this stage in the proceedings, indicate that no final decision has been made"). Instead, defendants, again, rely on *Karimova*, 2024 WL 3517852, arguing its holding "necessitates an end" to the debate whether consular nonreviewability bars plaintiff's claims. Defs.' Mem. at 10.

In *Karimova*, a consular officer "reviewed [plaintiff's] application and interviewed her," "officially 'refused' her application," and yet "placed her application in administrative processing." *Karimova*, 2024 WL 3517852, at *2 (internal quotation marks omitted). The D.C. Circuit affirmed the dismissal of plaintiff's complaint, which alleged that "the consular officer . . . 'breached [her] duty . . . to make a final decision' on [plaintiff's] application 'within a reasonable time,'" holding that once "a consular officer makes an official decision refusing to issue a visa," that visa "remains officially refused." *Id.* at *2 (second omission in original). Thus, construing the plaintiff's claim to be a request to order the consular officer to "make yet another 'final decision' on [plaintiff's] already-refused visa application," the Circuit found the plaintiff had "not identified an adequate legal basis for that duty." *Id.* at *6.

*Karimova* "suggests that once 'a consular officer reviewed Plaintiff's application, interviewed her, and ruled that no visa would be granted,' Plaintiff's visa application was 'officially refused' notwithstanding its later placement in administrative processing." *Asadi*, 2024 WL 3835409, at *4 (alterations accepted) (quoting *Karimova*, 2024 WL 3517852, at *4). *Karimova* thus leaves uncertain the case law in this District rejecting application of the consular nonreviewability doctrine where, as here, a plaintiff's application has been "refused" but simultaneously—and confusingly—is still subject to further administrative processing. To be sure, some Judges on this Court have taken *Karimova* to repudiate those decisions. Defs.' Mem. at 6-7 (citing *Yaghbounezhad v. Stufft*, 734 F. Supp. 3d 87 (D.D.C. 2024), and *Sedaghatdoust v. Blinken*,

12

735 F. Supp. 3d 1 (D.D.C. 2024)); *see also Amjad v. Schofer*, No. 24-cv-1773 (CJN), 2024 WL 4416984, at *1 (D.D.C. Oct. 4, 2024).   These cases are not binding and have been found unpersuasive by other Judges on this Court, including the undersigned.  *See, e.g.*, *Hamdan*, 2024 WL 4553983, at *4 n.2; *Janay*, 2024 WL 3432379, at *9-10; *De Belinay v. Mayorkas*, No. 24-cv-240 (CRC), 2025 WL 671120, at *4 (D.D.C. Mar. 3, 2025).[4]

*Karimova* does not, as defendants urge, "end . . . [the] debate," Defs.' Mem. at 10, and require disposal of this case on consular nonreviewability grounds.   First, taking plaintiff's allegations as true, *see Ziglar v. Abbasi*, 582 U.S. 120, 127 (2017), the consular officer's "refusal" of plaintiff's visa application subject to further "administrative processing" was a "normal part of the visa application process" after which the "application [would be] adjudicated."  Compl. ¶ 33. The facts of this case are in material respects indistinguishable from post-*Karimova* suit *Fallahi v. Bell*, where plaintiff's application for a nonimmigrant worker visa had similarly been refused, "placed in 'administrative processing,'" and plaintiff received "no meaningful status updates."  No. 23-cv-3292 (APM), 2024 WL 3887380, at *1 (D.D.C Aug. 20, 2024).   The court reasoned that "[w]hile Defendants cannot direct a particular *outcome* with respect to Plaintiff's visa

---

[4]      Defendants cite *Department of State v. Muñoz*, 602 U.S. 899 (2024), and *Baan Rao Thai Restaurant v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021), to support their argument that the consular nonreviewability doctrine bars review of plaintiff's claim, Defs.' Mem. at 9-10, but these cases are inapposite.  In *Baan Rao*, the D.C. Circuit addressed "whether a final decision on the merits of a visa application precluded judicial review," not whether, as here, "the doctrine of consular nonreviewability preclude[s] judicial review of 'refused' visa applications that remain[] subject to additional administrative processing."  *Isse v. Whitman*, No. 22-cv-3114 (BAH), 2023 WL 4174357, at *5 (D.D.C. June 26, 2023); *see also Baygan*, 2024 WL 3723714, at *5 (collecting cases and concluding that "*Baan Rao* says nothing about the judicial reviewability of visa processing delay occurring <u>before</u> an officer has made a final decision" (emphasis in original)).   Similarly, in *Muñoz*, the Supreme Court reaffirmed the doctrine of consular nonreviewability, holding the doctrine barred judicial review of a consular officer's denial of plaintiff noncitizen's visa application, *see generally Muñoz*, 602 U.S. 899, but focused on "the action of an executive officer 'to admit or to exclude a[] [noncitizen],'" *id.* at 908 (citation omitted), which is a different circumstance than that at issue here, as defendants concede, where "the basis for Plaintiff's challenge is not of final agency action, but rather agency *inaction*," Defs.' Mem. at 19 n.3 (emphasis added); *see also Azeez v. Murphy*, No. 23-cv-1947 (CRC), 2024 WL 3924565, at *2 (D.D.C. Aug. 23, 2024) (recognizing the same); *Baygan*, 2024 WL 3723714, at *5 (same).   Similarly, defendants' invocation of *Kolesnikov v. Blinken*, No. 23-cv-1675 (TSC), 2024 WL 3638345, at *2 (D.D.C. Aug. 2, 2024), *see* Defs.' Mem. at 12, is equally unavailing given that the plaintiff in that case, unlike here, did not allege any delay due to administrative processing.

adjudications, nothing precludes them 'from directing consular officers to *conclude* matters presented to them within a reasonable time.'" *Id.* at *3 (emphasis added) (quoting *Al-Gharawy*, 617 F. Supp. 3d at 10); *see also Baygan*, 2024 WL 3723714, at *4 (post-*Karimova* suit finding the same).    Second, the D.C. Circuit in *Karimova* did "not decide whether th[e] principle of nonreviewability applies" in cases, such as the instant one, "which purport[] to challenge the timing rather than content of a consular visa decision." *Karimova*, WL 3517852, at *6; *see De Belinay*, 2025 WL 671120, at *4 n.2 ("[*Karimova*] does not change this conclusion because it does not displace the principle that 'the doctrine of consular nonreviewability applies to challenges based on substance, not timing.'" (quoting *Azeez v. Murphy*, No. 23-cv-1947 (CRC), 2024 WL 3924565, at *3 (D.D.C. Aug. 23, 2024)); *Giza*, 2024 WL 3967284, at *4 n.2 (D.D.C. Aug. 27, 2024) (recognizing the same and refusing to use consular nonreviewability as a bar to plaintiff's actions).

Finally, defendants insist that *Karimova* binds this district court.  Defs.' Mem. at 5 n.1. *Karimova*, however, is a decision that the Circuit has *twice* determined should be unpublished. *Karimova*, 2024 WL 3517852, at *1; Order, *Karimova v. Abate*, No. 23-5178 (D.C. Cir. Sept. 10, 2024), Doc. No. 2074062 at 1.  In this posture, the case "may be cited as precedent" under D.C. Circuit rules, D.C. CIR. R. 32.1(b)(1)(B), but the panel's decision to issue *Karimova* as unpublished reflects a determination that the decision has "no precedential value in that disposition," D.C. CIR. R. 36(e)(2), and did "not 'alter[], modif[y], or significantly clarif[y] a rule of law," *In re Grant*, 635 F.3d 1227, 1232 (D.C. Cir. 2011) (alterations in original) (quoting D.C. CIR. R. 36(c)(2)(B)); *see also Ahmed v. Blinken*, No. 24-cv-153 (LLA), 2024 WL 4903771, at *4 n.4 (D.D.C. Nov. 27, 2024) (recognizing *Karimova*'s lack of precedential value and refusing to apply it).  The unpublished *Karimova* decision has led some Judges on this Court to view the decision as requiring

14

dismissal of visa mandamus cases on similarly pleaded factual allegations for failure to state a claim, *see, e.g.*, *Ibrahim v. Spera*, No. 23-cv-3563 (ABJ), 2024 WL 4103702, at *3 (D.D.C. Sept. 6, 2024), while others have proceeded to examine the merits of the sufficiency of the plaintiff's underlying unreasonable delay claim, *see, e.g.*, *Akter v. Flook*, No. 24-cv-146 (CRC), 2025 WL 661296, at *2 n.1 (D.D.C. Feb. 28, 2025), *Hajizadeh v. Blinken*, No. 23-cv-1766 (LLA), 2024 WL 3638336, at *3 n.3 (D.D.C. Aug. 2, 2024).  This Court adopts the latter course.  *See Gundas v. Blinken*, No. 24-cv-1064 (RC), 2024 WL 5056375, at *6 (D.D.C. Dec. 10, 2024) ("[T]he Court finds here that it does not need to determine the extent to which *Karimova* disrupts prior decisions rejecting the Government's reliance on the consular non-reviewability doctrine, as [plaintiff's] claims fail on their merits." (citation omitted)); *Momeni v. Blinken*, No. 23-cv-3421 (RCL), 2024 WL 4332604, at *5 n.5 (D.D.C. Sept. 27, 2024) (same); *Sharifishourabi v. Blinken*, No. 23-cv-3382 (RC), 2024 WL 3566226, at *4-5 (D.D.C. July 29, 2024) (same); *Sereshti*, 2024 WL 4625802, at *5 (same).[5]

### C.    Merits

On the merits, defendants argue that plaintiff fails to state a plausible claim for relief because any delay in the adjudication of plaintiff's visa application is not unreasonable. *See* Defs.' Mem. at 12-19.  "To state a claim for unreasonable delay, [p]laintiffs must first allege that the agency 'failed to take a discrete agency action that it is required to take,' and, second, that the

---

[5]    Defendants double-down on their argument that *Karimova* should be treated as binding and dispositive here, pointing to *Khaksari v. Chairman, Broad. Board of Governors*, 451 F. App'x 1, 4 (D.C. Cir. 2011), Defs.' Mem. at 5 n.1, where a Circuit panel relied on D.C. CIR. R. 32.1(b)(1)(B), which provides that counsel "may . . . cite[] as precedent" unpublished decisions entered after January 1, 2002, to note that an unpublished decision "has the force of precedent."  *Khaksari*, 451 F. App'x at 4.  *Khaksari* is itself unpublished, however, and even a decision with precedential value based on persuasive reasoning falls short of having binding effect, particularly in light of published D.C. Circuit opinions holding that "[u]npublished opinion[s] . . . [have] no precedential effect with respect to other parties."  *Head v. Wilson*, 792 F.3d 102, 109 (D.C. Cir. 2015) (omission in original) (quoting *Nat'l Classification Comm. v. United States*, 765 F.2d 164, 170 (D.C. Cir. 1985)).  In any event, whether *Karimova* is "controlling or not," Defs.' Mem. at 5 n.1, for the reasons stated *supra* in Part III.A, the facts of this case are distinguishable from *Karimova,* and for the reasons stated in Part III.C, plaintiff's claims fail on the merits.

15

delay was unreasonable." *Da Costa*, 80 F.4th at 340 (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004), and citing *Am. Anti-Vivisection Soc'y v. Dep't of Agric.*, 946 F.3d 615, 621 (D.C. Cir. 2020)).

The D.C. Circuit's six "*TRAC*" factors, set out below, guide this Court's unreasonable delay analysis:

> (1) [T]he time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency latitude in order to hold that agency action is unreasonable delayed.

*TRAC*, 750 F.2d at 80 (cleaned up); *see also Da Costa,* 80 F.4th at 340 ("[T]o guide our unreasonable-delay analysis, we ordinarily look to six non-exclusive *TRAC* factors." (citing *TRAC*, 750 F.2d at 80)). In cases challenging unreasonable agency delay, "the standards for obtaining relief" under the APA and the Mandamus Act are "essentially the same." *Shinseki*, 599 F.3d at 659 n.6; *see Norton*, 542 U.S. at 63-64.

Plaintiff argues that evaluation of the *TRAC* factors is inappropriate at the motion to dismiss stage because the *TRAC* is a "question of fact that must [not] be decided . . . on a motion to dismiss." Pl.'s Opp'n at 11. Where a plaintiff's complaint supplies sufficient factual allegations to evaluate the *TRAC* factors, however, a court may do so to determine whether the facts alleged are sufficient to state a plausible claim for unreasonable administrative delay. *See, e.g., Mokkapati v. Mayorkas*, No. 21-cv-1195 (BAH), 2022 WL 2817840, at *4 n.4 (D.D.C. July 19, 2022) (collecting cases reflecting "the majority view in this District . . . that application of the *TRAC* factors is appropriate at the motion-to-dismiss stage when the facts alleged do not support a

plausible claim of unreasonable delay"); *Sarlak v. Pompeo*, No. 20-cv-35 (BAH), 2020 WL 3082018, at *5 (D.D.C. June 10, 2020).   Here, the parties have supplied sufficient factual allegations, including undisputed specific dates when relevant agency actions occurred, rendering application of the *TRAC* factors entirely appropriate.  *See, e.g.*, *Mukkavilli v. Jaddou*, No. 23-5183, 2024 WL 1231346, at *1-2 (D.C. Cir. Mar. 22, 2024) (affirming dismissal of unreasonable-delay claim following weighing of *TRAC* factors); *Da Costa*, 80 F.4th at 339-46 (same).  On review, these allegations clearly show that the agency's delay in adjudicating plaintiff's visa is not unreasonable.

### 1.    *TRAC* Factors 1 and 2

The first two *TRAC* factors, which consider "the extent of and reasons for" agency delays, *Afghan & Iraqi Allies v. Blinken*, 103 F.4th 807, 816 (D.C. Cir. 2024), both weigh in favor of defendants.  The first *TRAC* factor—whether the agency follows a rule of reason in processing visas—is the "most important" one.  *Id.* (quoting *In re Core Commc'ns Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008)). This factor is often evaluated alongside the second *TRAC* factor—whether "Congress has established a timetable," *Mukkavilli*, 2024 WL 1231346, at *1 (citing *TRAC*, 750 F.2d at 80)—because consideration of whether agency adjudication delays are unreasonable necessarily implicates any deadlines imposed by Congress, *see Da Costa*, 80 F.4th at 340, and the second factor thus may "give[] content to the first," *Afghan & Iraqi Allies*, 103 F.4th at 816 (quoting *In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 549 (D.C. Cir. 1999)).

In assessing the first *TRAC* factor, courts "evaluate the length of the delay in light of 'the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency.'"  *Da Costa*, 80 F.4th at 340 (quoting *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003)).  They additionally consider "the level of disproportionality . . . previously held sufficient to grant relief."  *Id.* at 344.

Both parties recognize "the absence of a deadline" for adjudication of the visa plaintiff seeks. Pl.'s Opp'n at 13; *see also* Defs.' Mem. at 14. Plaintiff argues, however, that 8 U.S.C. § 1571(b) provides a "timetable" by stating that "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application, except that a petition for a nonimmigrant visa under section 1184(c) of this title should be processed not later than 30 days after the filing of the petition." Pl.'s Opp'n at 14-15 (emphasis omitted) (quoting 8 U.S.C. § 1571(b)). As a starting point, § 1571 is directed at the Immigration of Naturalization Service, which was dissolved in 2003 and divided into three agencies—U.S. Citizenship and Immigration Services, Customs and Border Patrol, and Immigration and Customs Enforcement, *see generally* Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135—none of which are named as defendants in this case and all of which are located within the Department of Homeland Security, also not named as a defendant. *See* 8 U.S.C. § 1571 ("The purposes of this subchapter are to . . . provide for regular congressional oversight of the performance of the Immigration and Naturalization Service in eliminating the backlog and processing delays in immigration benefits adjudications."). As discussed *supra* in Part I.A, USCIS approved plaintiff's O-1 visa petition, at which point the responsibility for approving plaintiff's ultimate visa application fell to the U.S. Consulate in Frankfurt, which is under the direction of the Department of State, the department in which all named defendants are lodged. *See* 8 U.S.C. § 1201.

Even if § 1571 applied here, the section would not dramatically tip matters in plaintiff's favor. To be sure, in *Da Costa*, the D.C. Circuit considered § 1571(b) and found that this statutory provision "somewhat favor[ed]" the plaintiffs, who had waited for longer than 180 days for their application to be processed, *Da Costa*, 80 F.4th at 344, as plaintiff has here. In so holding,

18

however, the Circuit did not hold that § 1571(b) was a legal measure of the reasonableness of agency delay, calling it an "aspirational statement" that was "insufficient to set a deadline." *Id.*; *see also, e.g.*, *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 51 (D.D.C. 2021) (interpreting § 1571(b)'s language as "nonbinding" and "prefatory" and collecting cases supporting this conclusion). Ultimately, the Circuit found it most significant that "the delay" alleged in the plaintiffs' case "ha[d] not reached the level of disproportionality . . . previously held sufficient to grant relief." *Da Costa*, 80 F.4th at 344. The same is true here.

"Absent a congressionally supplied yardstick, courts typically turn to case law as a guide." *Kahenya v. Blinken*, No. 23-cv-740 (TSC), 2024 WL 1253854, at \*3 (D.D.C. Mar. 25, 2024) (quotation marks and citation omitted). Courts have drawn no bright lines to determine reasonableness, but "[d]ecisions regarding the admission of foreign nationals are granted an especially wide degree of deference, as they frequently implicate relations with foreign powers, or involve classifications defined in the light of changing political and economic circumstances." *Didban v. Pompeo*, 435 F. Supp. 3d 168, 176 (D.D.C. 2020) (quotation marks omitted) (quoting *Trump v. Hawaii*, 58 U.S. 667, 702-03 (2018)). This deference has led "judges in this District [to] 'consistently' h[old]" that "two-to three year [delays] . . . do[] not amount to unreasonable delay." *Tahavori v. Blinken*, No. 23-cv-1460 (JDB), 2024 WL 1328546, at \*5 (Mar. 28, 2024) (quoting *Tekle v. Blinken*, No. 21-cv-1655 (APM), 2022 WL 1288437, at \*3 (D.D.C. Apr. 29, 2022)); *see also Da Costa*, 80 F.4th at 339-40, 342 (finding a four-and-a-half-year delay not unreasonable); *Azeez*, No. 23-cv-1947 (CRC), 2024 WL 3924565, at \*5 (D.D.C. Aug. 24, 2024) (finding seventeen-month delay not unreasonable). In contrast, delays of five years or more have "generally" been found unreasonable. *Yavari v. Pompeo*, No. 19-cv-2524, 2019 WL 6720995, at

19

*8 (C.D. Cal. Oct. 10, 2019); *see also Tahavori*, 2024 WL 1328546, at *5 (citing cases noting the same).

Nothing in plaintiff's complaint justifies departure from this precedent, and any material harm uniquely suffered by the plaintiff because of the delay is addressed by the other *TRAC* factors. The visa application at issue was placed in administrative processing on January 16, 2025, and was pending for just over eight months when plaintiff filed suit on September 19, 2025.  Compl. ¶ 28. "This is far too short a delay to be unreasonable." *Mahmoodi*, 2025 WL 763754, at *9.  "Finding an unreasonable delay here, when less time has passed than in [collected cases], would upset the rule prior cases have established." *Li v. Heller*, No. 23-cv-3025 (DLF), 2024 WL 3400111, at *6 (D.D.C. July 12, 2024) (citations omitted).

Taken together, the first and second factors thus weigh in defendants' favor.

### 2.    *TRAC* Factor 4

The fourth *TRAC* factor considers whether "expediting delayed action" will have a harmful effect on "agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80 (citations omitted).  Defendants correctly point out that this factor "carries significant weight," Defs.' Mem. at 16 (citing *Mashpee Wampanoag Tribal Council*, 336 F.3d at 1100), and weighs heavily in defendants' favor here, *id.*

Granting expedited agency action is considered inappropriate when that relief "would necessarily come 'at the expense of other similarly situated applicants,'" with "no net gain" in adjudications achieved.  *Da Costa*, 80 F.4th at 343-44 (quoting *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 192 (D.C. Cir. 2016), and *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991)); *see also Mukkavilli*, 2024 WL 1231346, at *2 (recognizing same).  Particularly "where resource allocation is the source of the delay, courts have declined to expedite action because of the impact on competing priorities." *Armah v. Dep't of State,* No. 22-cv-1714 (BAH), 2024 WL 2721634, at

20

*8 (D.D.C. May 28, 2024) (quoting *Liberty Fund, Inc. v. Chao*, 394 F. Supp. 2d 105, 117 (D.D.C. 2005)).

Plaintiff argues that he "does not seek wholesale judicial reordering of visa priorities or broad interference with agency operations," but rather "adjudication of a single O-1 visa application that has already undergone a completed interview." Pl.'s Opp'n at 18. This argument misses the mark on how visa adjudications work. The State Department has limited resources to manage its "troubling" visa application backlog, *R2 Techs. Corp. v. Rubio*, No. 24-cv-369 (LLA), 2025 WL 436306, at *7 (D.D.C. Feb. 7, 2025), and "it is readily apparent that '[c]onsular processing capacity is presently a zero-sum game,'" *Giza*, 2024 WL 3967284, at *7 (alteration in original) (quoting *Lee v. Blinken*, No. 23-cv-1783 (DLF), 2024 WL 639635, at *6 (D.D.C. Feb. 15, 2024)). The D.C. Circuit recognizes "no basis for reordering agency priorities," *In re Barr Lab'ys*, 930 F.2d at 76, and, as such, this factor weighs in favor of defendants, *see, e.g.*, *Abdullahi v. Blinken*, No. 23-cv-3900 (RC), 2024 WL 4880423, at *8 (D.D.C. Nov. 25, 2024) ("Although the underlying administrative process in this case . . . does not appear to be addressed or resolved in a first-in-first-out basis, compelling agency action on Plaintiffs' applications would 'impose offsetting burdens on equally worthy' applicants by effectively putting Plaintiffs 'at the head of the queue,' thereby 'mov[ing] all others back one space and produc[ing] no net gain.'" (alterations in original and citations omitted) (quoting *In re Barr Lab'ys*, 930 F.2d at 73, 75)); *Niyomwungere*, 2024 WL 5075827, at *5 ("No matter where Plaintiff lies in the queue, the relief he seeks would 'inevitably entail a judicial reordering of the Department's priorities.'" (quoting *Khazaei v. Blinken*, No. 23-cv-1419 (JEB), 2023 WL 6065095, at *7 (D.D.C. Sept. 18, 2023)). "While the effect of an individual case would be minimal, the accumulation of such individual cases being

pushed by judicial fiat to the front of the line would erode the ability of agencies to determine their priorities." *Tate v. Pompeo*, 513 F. Supp. 3d 132, 150 (D.D.C. Jan. 16, 2021).

Plaintiff objects that weighing *TRAC* factor 4 in defendant's favor here would "effectively render *TRAC* factor 4 dispositive in every visa-delay case, as any order compelling agency action could be characterized as affecting agency priorities." Pl.'s Mem. at 19. Even if any order directing adjudication of a visa application would indeed result in some reordering of agency priorities, that does not make *TRAC* factor 4 dispositive—plaintiffs who can show very long delays in adjudication, for example, may be able to show that moving their application closer to the front of the line is warranted, notwithstanding any concomitant reordering. *See, e.g.*, *Qureshi v. Napolitano*, No. 11-cv-5814 (YGR), 2012 WL 2503828, at *7 (N.D. Cal. June 28, 2012) (issuing mandamus when delay was more than five years and agency conceded no investigation or processing was underway).

Factor four weighs in favor of defendants.

### 3.    *TRAC* Factors 3 and 5

"The third and fifth factors are often considered together, and require the Court to consider plaintiffs' interests, health, and welfare." *Momeni*, 2024 WL 4332604, at *6 (quoting *Chowdhury v. Blinken*, No. 21-cv-1205 (RCL), 2022 WL 136795, at *4 (D.D.C. Jan. 14, 2022)). While "the individual health or welfare of th[e] specific plaintiff is most relevant when evaluating *TRAC* factors three and five," *Khan v. Bitter*, 23-cv-1576 (BAH), 2024 WL 756643, at *5 (D.D.C. Feb. 23, 2024), the third factor also looks to the impact on others from granting plaintiff's demanded relief, requiring attention to the "many others [who] face similarly difficult circumstances as they await adjudication of their visa applications," *Mohammad v. Blinken*, 548 F. Supp. 3d 159, 168-69 (D.D.C. 2021) (citation and internal quotation marks omitted). As already analyzed under

factor four, moving plaintiff's visa application to the front of the line would necessarily divert resources and move other applicants back in the line. *See supra* Part III.C.2.

Plaintiff alleges that the delay has caused him and his family "frustration and disappointment," "ongoing stress, emotional strain," and "diminish[ed] . . . stability." Compl. ¶ 36. In addition to "prevent[ing] [plaintiff] from executing his role as CEO of Industriax," *id.* ¶ 35, his older children are "unable to plan their studies and futures with clarity," *id.* ¶ 36. While this has led to emotional and financial distress, *id.*, "this case is not one where, for example, the plaintiff is 'separated from his children and wife' pending the adjudication of his visa," *Musaleev v. Bitter*, No. 24-cv-1100 (TJK), 2025 WL 315148, at *7 (D.D.C. Jan. 28, 2025) (quoting *Ghadami v. Dep't of Homeland Sec.*, No. 19-cv-397 (ABJ), 2020 WL 1308376, at *9 (D.D.C. Mar. 19, 2020)); *see also Gundas*, 2024 WL 5056375, at *9 ("Seeking employment-based admission to the United States necessarily entails some amount of career, economic, and educational uncertainty."). "Unlike in some other cases where prolonged family separation or underlying health concerns tied specifically to the delay at issue drove courts to find that *TRAC* factors three and five weighed in [a plaintiff's] favor," plaintiff and his family "do[] not face separation or injury to health because of further delay." *Gundas*, 2024 WL 5056375, at *9. Indeed, though repeatedly invoking "family separation" in briefing, plaintiff does not allege that he has been separated from his family as a result of the alleged delay. *See* Pl.'s Opp'n at 17. Additionally, the D.C. Circuit held that the third and fifth *TRAC* factors do not favor noncitizens where, as here, the noncitizen failed "for example, [to] allege that they are unable to access electricity, water, food, or shelter" due to delays in immigration benefits adjudication. *Da Costa*, 80 F.4th at 345. The Circuit also recognized that alleged financial harms and "uncertainty that results any time an individual must continue to wait to secure a benefit," which may prevent a noncitizen from "planning . . . and making arrangements

for [his] famil[y]," *id.* at 344-45 (citation omitted)—similar to plaintiff's allegations here, *see* Compl. ¶¶ 35-36—"are insufficient to tip *TRAC* factors three and five in [plaintiff's] favor," *Da Costa*, 80 F.4th at 345.  Thus, *TRAC* factors 3 and 5 weigh in favor of defendants.

        **4.**    ***TRAC* Factor 6**

The sixth and final *TRAC* factor provides that "the court need not 'find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed,'" *TRAC*, 750 F.2d at 80 (citation omitted), and is neutral absent "plausible evidence of bad faith," *Afghan & Iraqi Allies*, 103 F.4th at 820; *see also Da Costa*, 80 F.4th at 345-46.  Plaintiff in this case concedes that "there may not be bad faith," but contends that since defendants "do not provide a sound justification for the delay . . . neither should there be a determination of good faith."  Pl.'s Opp'n at 20.  Plaintiff argues that the responses provided to him by the Department of State are "only boilerplate," Compl. ¶ 33, but "[t]his alone is not an accusation of 'impropriety' or bad faith." *Mahmoodi*, 2025 WL 763754, at *10 (quoting *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 53 (D.D.C. 2021)).  "[R]egardless, 'the lack of plausible allegations of impropriety does not weigh against [plaintiff],' and the sixth factor is thus neutral and does not favor either side." *Id.*

        **5.**    ***TRAC* Factors Considered in Totality**

Considering the *TRAC* factors together, plaintiff fails to state a claim of unreasonable delay under the Mandamus Act or the APA.  Other cases involving substantially longer delays than presented here have overwhelmingly resulted in the same conclusion, and this Court applies the same reasoning to plaintiff's claims.  *See, e.g.*, *Da Costa*, 80 F.4th at 339-40, 342 (finding a four-and-a-half-year delay not unreasonable); *Azeez*, 2024 WL 3924565, at *5 (finding seventeen-month delay not unreasonable); *Mashaghzadehfard v. Blinken*, No. 23-cv-3164 (RJL), 2024 WL 4198689, at *5-6 (D.D.C. Sept. 16, 2024) (finding nineteen-month delay not unreasonable); *Rahimian*, 2023 WL 143644, at *7 (finding forty-one month delay not unreasonable); *Zaman v.*

24

*Dep't of Homeland Sec.*, No. 19-cv-3592 (ABJ), 2021 WL 5356284, at \*6 (D.D.C. Nov. 16, 2021) (finding forty-two month delay not unreasonable); *Akrayi v. Dep't of State*, No. 22-cv-1289 (CRC), 2023 WL 2424600, at \*3 (D.D.C. Mar. 9, 2023) (finding a nearly three-year delay not unreasonable); *Arab v. Blinken*, 600 F. Supp. 3d 59, 70 (D.D.C. 2022) (finding a visa processing delay of thirty months not unreasonable).  In the face of this overwhelming precedent, plaintiff fails to show that any of the other *TRAC* factors weigh so heavily in his favor as to outweigh the overall reasonableness of the delay.

While recognizing the hardship for plaintiff and his family, *see* Compl. ¶¶ 35-36, countless other noncitizens face similar or worse timetables as they await immigration decisions, *see Da Costa*, 80 F.4th at 346 (affirming dismissal where "[r]uling in favor of Plaintiffs would require USCIS to process [p]laintiffs' petitions ahead of those of other petitioners who have been waiting as long or longer for their EB-5 petitions to be adjudicated"); *Burwell*, 812 F.3d at 192 (collecting cases "reject[ing] mandamus claims that would have had the effect of allowing the plaintiffs to jump in the line, functionally solving their delay problem at the expense of other similarly situated applicants").

For all the stated reasons, plaintiff's complaint must be dismissed for failure to state a claim.

## IV.    CONCLUSION

For the foregoing reasons, defendants' Motion to Dismiss, ECF No. 5, is granted.  An Order consistent with this Memorandum Opinion will be filed contemporaneously.

Date: July 10, 2026

_____
**BERYL A. HOWELL**
United States District Judge